[No. 3870.]

VAN WAGENEN v. CARPENTER.

1. PRACTICE — ACTION TO ENFORCE TRUST — MISAPPREHENSION OF STATUS OF TITLE—NEW TRIAL.
Where in an action to enforce a trust against the trustee and a vendee of the trustee alleged to have taken title with notice of the trust, the vendee during the pendency of the action reconveyed the property to the trustee, but without knowledge of the reconveyance on the part of plaintiff or the court, the cause proceeded to trial, upon these facts being brought to the knowledge of the court in a motion for a new trial, the court properly exercised its discretion in granting

the motion since the misapprehension as to the status of the title at the time of the trial placed upon plaintiff the burden of showing that the vendee took title with notice of the trust which he ought not to have been obliged to assume, and the cause was tried upon a false issue.

2. JURISDICTION—ATTACHMENT PROCEEDINGS—COLLATERAL ATTACK —PRESUMPTION.

The jurisdiction of a court of general jurisdiction in attachment proceedings is general, and its actions therein are aided by the same presumptions as in cases of personal service. Where jurisdiction was obtained in a case by attachment of the property of a nonresident, a judgment rendered therein and the property sold under a special execution, upon a collateral attack it will be conclusively presumed that everything necessary to be done was done, unless the contrary appears from the record, and a sheriff's deed thereunder is sufficient to establish ownership in the purchaser.

3. MINING CLAIMS—RELOCATION—COTENANTS—TRUSTS.

Where a mining claim owned by several parties, one of whom was a nonresident, was relocated and its name changed for the purpose of getting rid of a contest, the relocation inured to the benefit of all the cotenants in the same proportion as their interest in the old claim whether or not they had knowledge of or consented to the relocation, and the resident cotenants having conveyed the property to a third party without consideration for the purpose of obtaining a patent, the patentee held the property in trust for all the cotenants and a conveyance of the property by the patentee without consideration, conveyed it to the vendee impressed with the same trust, and the nonresident cotenant or his assignee or successor in interest could maintain an action against the holder of the legal title to enforce the trust and compel a conveyance of the same interest in the new location that he owned in the old.

4. TRUSTS AND TRUSTEES—AFTER-ACQUIRED TITLE—CONVEYANCE— STATUTORY CONSTRUCTION.

Section 430, Mills' Ann. Stats., providing that if any person shall convey land not being possessed of the legal estate or interest therein at time of sale, any after-acquired title by the vendor shall be taken and held in trust for the vendee does not apply where the vendor held the naked legal title in trust, and conveyed it in execution of the trust. Such a vendor is not estopped from subsequently acquiring a beneficial interest in the property and may enforce such interest against his vendee.

*Appeal from the District Court of Arapahoe County.*

THIS is an action to enforce a trust. The facts upon which the right to relief is predicated are in substance as follows:

On August 10, 1878, Andrew W. Gill purchased from the original locators a certain mining claim known as the Paris lode claim, situate in Lake county, Colorado. During the years 1878 and 1879, by sundry conveyances, he parted with all his interest in the claim except six eighteenths. On December 15, 1879, Theo. F. Van Wagenen, for himself and as attorney in fact for the other owners, including Mr. Gill, entered into a bond and contract to convey to the Energetic Mining & Prospecting Company six eighteenths, or one third of the claim, in consideration of the sinking of a drill hole upon the property. The company performed the work according to the terms of the contract. Shortly thereafter, and on April 9, 1880, Van Wagenen conveyed to the company, for himself and his co-owners, the six eighteenths agreed upon, which included two eighteenths of Gill's interest. On February 1, 1881, Gilbert L. Havens, agent of the Energetic Mining & Prospecting Company, and Alexander C. Millspaugh, at the request of Van Wagenen, in order to get rid of some conflict, relocated the Paris ground, and named it the Pyrenees, with the understanding that all the owners in the Paris should retain like interests in the new location. On February 12, 1881, the Pyrenees was conveyed by the locators to Theo. F. Van Wagenen, without consideration, to enable him to apply for patent. On the next day he conveyed to Gilbert L. Havens, who had acquired all the interests of the Energetic Mining & Prospecting Company, an undivided six eighteenths interest in the Pyrenees, covering the company's former interest in the Paris. On February 19, 1881, Havens and Van Wagenen, by their joint deed, conveyed the title to the Pyrenees to M. B. Carpenter, without consideration, and without his knowledge, for the purpose of getting a patent in his name. On October 29, 1881, the receiver's receipt to the Pyrenees having been obtained in Carpenter's name, he conveyed seven eighteenths, which included the six eighteenths formerly belonging to the Energetic Mining & Prospecting Company in the Paris, to Havens, without consideration; and on the same day, at Van Wagenen's sugges-

tion, and without any consideration, he conveyed to Anna R. Van Wagenen the title to the remaining eleven eighteenths of the Pyrenees, covering the remaining interests in the Paris. At the time of the relocation of the ground as the Pyrenees, and during the patent proceedings, Gill was a nonresident of Colorado, and had no notice of these proceedings.

On March 3, 1886, Carpenter commenced suit in the county court of Arapahoe county against Andrew W. Gill and others, including Mrs. Van Wagenen, to recover $1,731 for services rendered defendants as attorney, in prosecuting and defending certain suits between January 11, 1881, and January 12, 1886. In this action writ of attachment was issued to the sheriff of Lake county, who indorsed thereon the following certificate of levy:

"I do hereby certify that by virtue of a certain writ of attachment to me as sheriff directed, dated the 3d day of March, A. D. 1886, and issued out of the county court of the Second Judicial District of the state of Colorado, in and for the county of Arapahoe, in favor of Mason B. Carpenter and against Chas. M. Stead, Vanderbilt Allen, Edward L. Oppenheim, Andrew W. Gill, Frederick Prentice, Anna R. Van Wagenen, Theodore F. Van Wagenen and Gilbert L. Havens, I have levied upon the following described property, to wit: All the right, title and interest of the above named defendants in and to the Paris lode mining claim situate in California Mining District, the Pyrenees lode mining claim, situate in California Mining District. All of the above described property being situate in the County of Lake and State of Colorado.

"Dated at Leadville, March 4, 188

"J. A. LAMPING, Sheriff,
"By W. G. MILNER, Under Sheriff."

And the following return:

"I do hereby certify that I have duly executed the within writ on this 4th day of March, 1886, by levying on all the right, title and interest of the within named defendants in

and to the real property as shown in certificate of levy hereto attached. None of the within named defendants found in my county of Lake.

"J. A. LAMPING, Sheriff,
"By W. G. MILNER, Under Sheriff."

On May 17, 1886, the case was dismissed as to all but Gill, and service having been made by publication, judgment was entered against him, and special execution issued thereon; and on June 22, 1886, all his legal and equitable interests in the Paris and Pyrenees were sold to Mason B. Carpenter in satisfaction of his judgment; and on May 14, 1887, the sheriff executed his deed to him, conveying "all the right, title and interest, both legal and equitable of the above named defendant in and to the Paris * * * and the Pyrenees lode mining claims."

On February 28, 1890, he instituted this suit in the district court of Arapahoe county, against Anna R. Van Wagenen and Lewis M. Gregory; and for cause of action stated in substance the foregoing facts, and alleged that on the 3d day of March, 1886, Anna R. Van Wagenen held the legal title to the undivided four eighteenths interest in the Pyrenees lode mining claim, in trust, for the sole benefit and use of Andrew W. Gill; and that she had, on or about the first day of January, 1889, conveyed by deed the whole of the legal title to said four eighteenths interest to said Gregory, who accepted and received the title thereto charged with said trust, with full, actual and constructive notice and knowledge of the equitable interest of plaintiff therein.

The defendants appeared and filed their answer, denying the material allegations of the complaint. On February 4, 1896, the cause was tried to the court, and resulted in a general finding for the defendants. Thereafter plaintiff filed his motion for a new trial upon the ground, among others, of newly discovered evidence, and surprise which ordinary prudence could not have guarded against; which was sustained, and new trial granted.

Thereafter, by leave of court, plaintiff filed an amended and supplemental complaint, which, on motion, was stricken from the record, on the ground that it stated a new and different cause of action from that declared on in the original complaint. On November 6, 1896, plaintiff filed his second amended and supplemental complaint against Anna R. Van Wagenen, as sole defendant; to which she filed her answer, specifically denying all the material allegations therein contained. A replication was filed thereto, whereupon the cause was again tried to the court, which found the issues of fact joined in favor of plaintiff; and adjudged him to be the owner of an undivided four eighteenths interest in and to said Pyrenees lode mining claim; and that defendant held the legal title to said interest in trust, and ordered her to convey the same to him. To reverse this decree Mrs. Van Wagenen brings the case here on appeal.

Mr. CHAS. H. TOLL, Mr. D. V. BURNS and Mr. J. C. HELM, for appellant.

Mr. W. N. McBIRD and Mr. CHAS. J. HUGHES, Jr., for appellee.

MR. JUSTICE GODDARD delivered the opinion of the court.

1. The first error relied on is the action of the court granting the appellee a new trial. At the time of the commencement of the action on February 28, 1890, there was of record in Lake county a deed of Mrs. Van Wagenen dated October 11, 1887, conveying the four eighteenths interest in question to Lewis M. Gregory; and the complaint averred that the title to this interest was vested in him. This was not denied in the answer; and on the trial, which occurred on February 4, 1896, the court and counsel, supposing that Gregory still held the title, tried the case upon that theory.

It appears from the showing made upon the motion for a new trial, that on October 21, 1887, Gregory reconveyed this

title to Mrs. Van Wagenen. This deed was not placed on record until 1892, during the pendency of the action. The appellee first learned of the existence and record of this deed in April, 1896. Upon these facts being brought to the attention of the judge who tried the cause, he sustained the motion and granted a new trial, as he expressly states, upon the principal ground that he supposed at the time the case was decided that Gregory still held title to said interest in said mine, which had been theretofore conveyed to him by the defendant Anna R. Van Wagenen.

The case was therefore tried under a misapprehension as to the actual status of the title to the interest in question. That this mistake seriously embarrassed plaintiff in establishing his claim, and imposed upon him a burden that he ought not to have been obliged to assume, is obvious. It made it incumbent upon him to show that Gregory obtained the title with notice or knowledge of the trust contended for; and failing in this, he could not recover, no matter how clearly he may have been able to establish his right to relief against Mrs. Van Wagenen, had the true condition of the title been known. Upon this assumption, testimony was offered and witnesses cross-examined, and special objections were interposed to certain testimony clearly admissible as against Mrs. Van Wagenen, upon the ground that it was inadmissible to affect Gregory's title. It is apparent, from the statement of its reason for granting the new trial, that the conclusion of the court was largely influenced, if not entirely controlled, by the supposition that Gregory held the title, and was presumably a purchaser without notice. It is therefore manifest that the cause was tried and determined upon a false issue, and that the appellee was thereby prevented from having his right to the property in question fairly considered and determined. Nor do we think that his failure to discover the true state of the title, under the circumstances, constitutes such a want of diligence as should deprive him of the right to have such issue fairly tried. He had a right to rely upon the title as recorded at the commencement of

the action; especially as he was in no way advised by the answer that an unrecorded reconveyance was in existence; and was led to believe, by the conduct of defendants, that no change of title had taken place. We think the court below properly exercised its discretion in granting the motion for a new trial; and we can see no good reason for interfering with its action.

2. The next objection is that the judgment rendered in the case of *Carpenter v. Gill*, and all proceedings had thereunder, were null and void for the reason that it does not affirmatively appear on the return of the sheriff that the writ of attachment was levied as required by subdivision 2, sec. 98, Code of Civil Procedure of 1877, which was then in force, and which reads as follows:

"*Second.* Real property, or any interest therein, belonging to the defendant, and held by any other person, or standing upon the records of the county in the name of any other person (but belonging to the defendant), shall be attached by leaving such person or his agent a copy of the writ and a notice that such real property (giving a description thereof), and any interest therein belonging to the defendant, are attached, pursuant to such writ, and filing a copy of such writ and notice with the recorder of the county."

It will be observed that the return of the sheriff as above set forth does not state that he left with Mrs. Van Wagenen, in whose name the legal title to the Pyrenees then stood, a copy of such writ and notice, or that he filed the same with the recorder of Lake county. It is insisted that, as the action was against a nonresident, and the only service of summons had was by publication, and the levy of the writ of attachment being an essential prerequisite to the acquirement of jurisdiction, that it must be made in strict conformity with the requirements of the statute; and the return of the sheriff must show affirmatively that this was done. On the other hand, it is not denied that to initiate jurisdiction against a nonresident a seizure of property belonging to him within the state must be made, and to constitute a valid seizure the

levy of the writ of attachment must be made in conformity
with all the requirements of the statute, but it is contended
that when a judgment rendered by a court of general juris-
diction is collaterally attacked, as in this case, it will be con-
clusively presumed that all the acts necessary to constitute a
valid levy were done, unless the contrary appears from the
record.    There exists an irreconcilable conflict in the author-
ities upon this question.    This conflict arises from the view
the different courts entertain as to the nature of the jurisdic-
tion that the courts exercise in enforcing remedies provided
by the attachment acts ; some holding that the power to take
cognizance of attachment proceedings is a special jurisdiction
conferred by the statute, which was not within the general
jurisdiction of the courts ; and that everything necessary to
show that such jurisdiction has been rightfully exercised
must appear upon the face of the record ; while by others it
is held that attachment proceedings are within the general
jurisdiction conferred by the constitution, and that the stat-
ute has only prescribed a new mode or process for bringing
the persons or property within their control ; and that the
same presumption in favor of jurisdiction of such actions
will be indulged as in other cases.    Among the cases an-
nouncing the latter view are *Harvey v. Tyler*, 2 Wall. 328,
*Galpin v. Page*, 18 Wall. 350, *Voorhees v. Bank*, 10 Peters,
449, *Willis v. Mooriny*, 63 Texas, 340, *Thompson v. East-
burn*, 16 N. J. Law, 100, *Diehl v. Page*, 3 N. J. Eq. 143,
*Stewart v. Anderson*, 70 Texas, 588, Works, on Juris. of
Courts, p. 547, and *Bank of Colfax v. Richardson*, 54 Pac. Rep.
359.

In *Voorhees v. Bank*, Justice Baldwin, speaking to this
point, said :

" The several courts of common pleas of Ohio, at the time
of these proceedings, were courts of general civil jurisdiction ;
to which was added, by the act of 1805, power to issue writs
of attachments, and order a sale of the property attached on
certain conditions ; no objection therefore can be made to
their jurisdiction over the case, the cause of action, or the
property attached."

In *Willis v. Mooring*, it is said:

" The generally accepted doctrine now seems to be that the jurisdiction over attachment proceedings is part of the general jurisdiction conferred upon the courts in which they are cognizable; and the same presumption in favor of that jurisdiction must be indulged as in other cases, and the same intendments in favor of the officer executing process."

In *Stewart v. Anderson*, Stayton, C. J., uses the following language:

" There has been much difference of opinion in courts for whose decisions we have the highest respect, as to whether the same presumptions will be indulged in favor of jurisdiction when reliance is placed on citation by publication and seizure of property, as will be when personal service made within the territory over which the court has jurisdiction is relied upon. * * * Whether the jurisdiction of a court be general or special, it cannot be made to depend upon the character of the process through which it acquires power over the person or thing to be affected by its final adjudication. The constitution confers jurisdiction, but the legislature prescribes the process through which persons and things may be brought within its reach and made subject to its exercise."

We think the rule announced in these cases is supported by the better reason; and that when action of a court of general jurisdiction is invoked in attachment proceedings, although its power to so act is conferred by a special statute, it nevertheless, in exercising such special powers, acts judicially and is none the less a court of general jurisdiction because it proceeds according to rules and practice prescribed by the statute. The same considerations of public policy and reasons exist why the record, if silent, should be aided by the same presumptions which obtain in cases of personal service. Whether a writ of attachment is issued as an auxiliary to the main action, or to initiate jurisdiction against a nonresident, to constitute a valid levy of the writ the acts required by the statute must be done, which are the same in both instances, and the purpose to be accomplished the same,

to wit, to bring the property under the dominion of the court for the purpose of subjecting it to the satisfaction of any judgment that may be obtained. The rule requiring the seizure of property within the state belonging to a nonresident defendant, as a condition precedent to the exercise of jurisdiction, is a judicial, and not a statutory requirement. *Bank of Colfax v. Richardson, supra.* As Bean, J., who delivered the opinion in that case, in speaking of this rule, says, " Its requirements are satisfied, and the court acquires sufficient jurisdiction of the rem to protect its proceeding from collateral attack, when the property of the defendant has been actually brought within the power and control of the court by a seizure under a lawful writ of attachment issued in the action, although there may be irregularities, even errors, in the attachment proceedings."

Our conclusion upon this question does not militate against the rule announced in *Thompson v. White*, 25 Colo. 226, and other decisions of this court in regard to the strictness with which the requirements of the attachment act must be observed; but only recognizes, as applicable to judgments in this class of cases, the same presumption of jurisdiction upon collateral attack that obtains in other cases, to wit, that everything necessary to be done was done, unless the contrary appears from the record. The plaintiff introduced in evidence, among other things, a certified copy of the final judgment rendered by the county court of Arapahoe county, in the case of *Carpenter v. Gill*, which recited that the defendant, Gill, having been regularly served with process, and having failed to appear and answer the complaint, his default was entered according to law; a special execution issued thereon, and a sheriff's deed, conveying to him, as purchaser at a sale duly made thereunder, all the right, title and interest of Gill in and to the Paris and Pyrenees mining claims. This was sufficient to establish his ownership of the Gill interest, and to entitle him to maintain his right thereto against appellant.

3. This brings us to the vital question in the case, and that is whether the appellant acquired and holds title to the four

eighteenths interest in controversy, in her own right, or burdened with the alleged trust. The solution of this question is not embarrassed by any controversy touching the facts, but depends upon the effect to be given to the facts as established by undisputed testimony, which appear in the foregoing statement, and in brief are, that Gill in 1878 owned the Paris lode claim, and from time to time during that year and the year following he conveyed away all of his title except six eighteenths, two eighteenths of which Theo. F. Van Wagenen, acting as his attorney in fact, conveyed to the Energetic Mining & Prospecting Company, in pursuance of the contract entered into with that company. There is nothing to show that he ever parted with, and was not still the owner of, the remaining four eighteenths on February 1, 1881, when the ground included in the Paris claim was relocated and named the Pyrenees. This relocation was made at the suggestion of Theo. F. Van Wagenen, by Gilbert L. Havens, the then owner of one third of the Paris, and one Millspaugh, acting for Van Wagenen. At this time the Paris was not subject to forfeiture, but was relocated and renamed for the purpose of getting rid of some adverse claim made to a portion of the ground, and to procure patent, and with the understanding that all parties interested in the Paris claim should retain the same interest in the Pyrenees. At this time Gill was a nonresident of Colorado, and it does not appear whether he had knowledge of this relocation or in any way consented thereto, except through Van Wagenen, who was his attorney in fact, and had charge and management of this proceeding. While appellant attempts, in her answer, to deny that the location of the Pyrenees was made with the knowledge, or for the benefit of Gill, or for the purpose of removing any apparent cloud upon the title of the Paris claim, she admits that such relocation was made for the benefit of all the other owners. After such relocation, and on February 12, 1881, the locators conveyed the Pyrenees lode to Theo. F. Van Wagenen, who thereupon conveyed to Gilbert L. Havens an undivided one third of said claim. On

February 19, 1881, Van Wagenen and Havens conveyed the legal title to the Pyrenees lode to appellee for the purpose of procuring patent. A patent was procured in his name, and he, by direction of Van Wagenan, conveyed seven eighteenths to Havens and eleven eighteenths to appellant, who afterwards conveyed to Oppenheim, Stead and Allen two eighteenths respectively, being the same amount they owned in the Paris lode, retaining in her name the remaining five eighteenths, which represented the one eighteenth owned by Theo. F. Van Wagenen, and the four eighteenths owned by Gill in the Paris claim. There is no pretense that she paid any consideration for the conveyance to her by appellee of the five eighteenths interest which she retains, but avers that she acquired it from her husband, and that the same was conveyed to her by his direction.

It seems to us too clear to admit of dispute that a relocation of a mining claim by one tenant in common, under the circumstances attending the relocation of the Paris, would inure to the benefit of his cotenants, whether the relocation was made with their knowledge and consent or not; that such a result would necessarily follow from the fiduciary relation that exists between tenants in common, which prevents one of them from acquiring title to the common property, in violation of the trust and confidence that such relation imposes. *Hunt v. Patchin*, 35 Fed. Rep. 816 ; *Franklin Mining Co. v. O'Brien*, 22 Colo. 129; *Turner v. Sawyer*, 150 U. S. 578; *Mills v. Hart*, 24 Colo. 505 ; Freeman on Cotenancy, §§ 151–4; *Lockhart v. Rollins*, 2 Idaho, 503 ; Lindley on Mines, § 407 ; *Brundy v. Mayfield*, 15 Mont. 201.

As was said in *Turner v. Sawyer, supra* :

" It is well settled that cotenants stand in a certain relation to each other of mutual trust and confidence ; that neither will be permitted to act in hostility to the other in reference to the joint estate ; and that a distinct title acquired by one will inure to the benefit of all."

Whether such result would follow if it was true, as assumed by counsel for appellant, that the Paris was subject to relo-

cation at the time, and was relocated with the intention and for the purpose of excluding some of the original owners of the Paris, it is unnecessary to determine, since it is clear that those conditions did not exist. It sufficiently appears that the Paris was not at that time open to relocation, most of the work by the Energetic Mining & Prospecting Company having been done in the year 1880, and that the relocation was made for the benefit of all owning interests in the Paris.

But counsel for appellant also contend that, notwithstanding the fact that Gill's title to the four eighteenths interest still remained of record, by reason of his silence and failure to assert his right to the interest, it is to be presumed that he had abandoned or disposed of it prior to the relocation of the Paris. We do not think there is any merit in this claim. It certainly is not to be presumed, in the face of the fact that his title to this interest then stood of record in his name, that he had transferred it to any one else; nor is abandonment to be presumed from mere silence. A title to realty is not lost by failure of the owner to assert his claim to it. Other circumstancs must concur that would in equity estop him from asserting it, to the prejudice of one who had been misled by his silence. No such conditions are present in this case. In the circumstances of this case it is clear that the title acquired by the locators of the Pyrenees was impressed with a trust in favor of the owners in the Paris, to the extent of their respective interests in that claim; and that Gill, as the owner of four eighteenths interest remained the equitable owner of that interest in the new location, only the naked legal title thereto vesting in the locators, in trust for him; and nothing occurred in the subsequent proceedings that in any way affected his right to that interest. The conveyance of this title by Van Wagenen and Havens to appellee was concededly for the purpose of enabling him to procure a patent to the Pyrenees in his name, for the joint benefit of all interested; and it goes without saying that the patent he obtained inured to their benefit, and vested him with the legal title solely as their trustee. While his deed to appellant recites a consider-

ation of $11,000, it appears by undisputed testimony that, as a matter of fact, it was a voluntary conveyance, and without any consideration whatever; hence it transferred to her only the legal title to the eleven eighteenths interest, impressed with the trust that existed in favor of the original beneficiaries.   Pomeroy, in his work on Equity Juris. § 1048, states the rule upon this subject as follows :

" Wherever property, real or personal, which is already impressed with or subject to a trust of any kind, express or by operation of law, is conveyed or transferred by the trustee, not in the course of executing and carrying into effect the terms of an express trust, or devolves from a trustee to a third person, who is a mere volunteer, or who is a purchaser with actual or constructive notice of the trust, then the rule is universal that such heir, devisee, successor, or other voluntary transferee, or such purchaser with notice, acquires and holds the property subject to the same trust which before existed, and becomes himself a trustee for the original beneficiary. * * * It is not necessary that such transferee or purchaser should be guilty of positive fraud, or should actually intend a violation of the trust obligation ; it is sufficient that he acquires property upon which a trust is in fact impressed, and that he is not a *bona fide* purchaser for a valuable consideration and without notice."

Counsel for appellant, however, contend that appellee is estopped, by this deed, from asserting the interest that he subsequently acquired by virtue of sec. 430, Mills' Ann. Stats. which provides, *inter alia,* that :

"If any person shall * * * convey * * * land * * * not being possessed of the legal estate or interest therein at the time * * * and after such sale * * * shall become possessed of, and confirmed in, the legal estate of the land or real estate so sold and conveyed, it shall be taken and held to be in trust, for the use of the * * * vendee ; " etc.

We do not think that the conveyance given by appellee comes either within the letter or the spirit of this statute. Its obvious purpose is to confirm in the grantee any legal es-

tate or interest subsequently acquired by the grantor which was intended to be conveyed. As we have seen, appellee was trustee of the naked legal title. He had no beneficial interest or estate in the land, nor did he attempt to convey such an interest. Neither, therefore, by this statute nor by any principle of equity, is he estopped from subsequently acquiring a beneficial interest in the property, and of availing himself of such remedies to enforce his right thereto as his predecessor in interest might have invoked.

The final contention of counsel is that the evidence introduced was not of the character and probative force requisite to establish a trust of this character. Aside from the parol testimony, which we think was admissible to show the intent and purpose with which certain acts were done, to aid the presumption which the law implied from the acts themselves, the record evidence was sufficient in itself to clearly and conclusively establish the trust as alleged; and the finding of the court below upon this issue, as well as its finding that the appellee was the owner of the Gill interest and entitled to the relief demanded, was supported by adequate testimony.

Upon a careful consideration of all the questions presented, and the able arguments of counsel, we are satisfied that the trial court committed no error that will justify a reversal. Its judgment is therefore affirmed.

*Affirmed.*