No. 14,240.

Estate of Smith.

Smith *v.* Pueblo Savings and Trust Company,
Administrator.
(83 P. [2d] 333)

Decided October 3, 1938.

92

Mr. M. W. SPAULDING, for plaintiff in error.

Mr. SAM PARLAPIANO, Mr. HARRY P. VORIES, for defendant in error.

*In Department.*

MR. JUSTICE BAKKE delivered the opinion of the court.

THIS was an action in the county court of Pueblo county by Charles Franklin Smith, a devisee under the will of James Edward Smith, deceased, against the Pueblo Savings and Trust Company, as administrator with will annexed, for an accounting, and for an order upon it to proceed and collect from the bondsmen of the deceased executor all sums found to be due the estate. The bank, before filing its answer, presented its petition setting out the alleged fact that Charles Franklin Smith had "sold, assigned, transferred and conveyed to his brother Hugh M. Smith all of the interest which the said Charles Franklin Smith then had in the estate of his deceased father," and praying that pending the determination thereof it be relieved from any obligation to plead, etc. Evidence was taken on this question and the court concluded that Charles Franklin Smith no longer had any interest in the estate and dismissed his action. He seeks reversal on a writ of error.

Since all proceedings relating to the making of wills and affecting the distribution of estates are statutory, we seriously doubt the existence of any authority for this action, but, since no good purpose would be served by its dismissal, and the point not being urged by counsel for defendant in error, we shall proceed to consider the case on its merits.

Reference will be made to petitioner, plaintiff in error herein, as Smith, and to the defendant in error, as the bank.

The facts are as follows: James Edward Smith died December 9, 1911, leaving a widow, five children and two grandchildren (the latter the issue of a deceased daughter). His will and codicil thereto, admitted to probate January 11, 1912, gave a one-sixth interest of his estate to each one of the five children, and the other one-

sixth to the grandchildren as a life estate to them, but providing that "in the event of the death of both Frederick Stevenson Mitchel and Emerson Earl Mitchel without issue and prior to my death, then the share that such grandchildren would have received shall go in equal parts to my surviving children." These provisions were subject, however, to a specific annuity of $600 a year to testator's widow during her lifetime.

A short time after the will was admitted to probate, the widow filed her renunciation of the provisions of her husband's will and her claim for one-half of the estate, which inventoried about $50,000. A compromise was effected under the terms of which the widow was to receive $2,000 in cash and an annuity of $900 a year for life. This agreement was signed by M. G. Saunders, as attorney for Charles Franklin Smith, and by B. D. V. Reeve, as guardian ad litem for Smith. At the time of his father's death, Smith lacked three months of being twenty-one years of age. He became twenty-one on March 12, 1912, and married about the same time.

Shortly after the admission of the will to probate, the children met and divided the household effects, consisting of furniture, some chickens, and other small items, Smith and his wife being present and sharing in the distribution. These items of property were not included in the administration of the estate.

There is some conflict in the evidence as to what Smith did subsequently, but the preponderance of the testimony was to the effect, and the court apparently found, that four or five years later, he, being anxious to realize a present financial benefit, tried to dispose of his interest in the estate, first, to a brother, then, to a sister. Finally, in April, 1917, he executed and delivered to his brother Hugh a warranty deed conveying an undivided one-sixth interest in the real estate of the testator specifically described therein, and as "Being all my interest in the estate of my deceased father James Edward Smith."

This deed was properly acknowledged on April 12, 1917, and recorded in Pueblo county on June 1, 1917.

During the course of the administration of the estate, there were two proceedings for the sale of real estate, notices of which, with petition attached, were properly served on Smith. Each of these notices contained almost identical language: "Your petitioner further states that since the death of the said James Edward Smith the said Charles Franklin Smith has duly conveyed, assigned and sold all his right, title and interest in and to said estate and all his interest in and to the real estate belonging to the decedent's estate to Hugh Morrison Smith, who, up to the time of his death was the owner thereof." While Smith denied receiving these notices, the sheriff's return on one shows personal service in Colorado; service of the other as appears by the record, being made by mailing a copy, and by publication.

Before Smith conveyed his interest to his brother Hugh, he had borrowed on it from W. D. Koen an amount in the aggregate of $1,400, giving deeds of trust as security, which indebtedness was assumed and paid by Hugh as a part of the $1,900 consideration paid Smith for his interest. Testifying concerning this, Smith said: "I know I didn't assign only the real estate, and that was only as security to pay off the loan."

The inventory of the personal property as of February 6, 1912, listed the following:

| "No. | Chattel Property | Value |
|---|---|---|
| "Ten shares of the Capital Stock of The Pueblo Masonic Building Association | | $ 100.00 |
| "Twenty-five thousand (25000) shares of the Capital Stock of The Banner Gold Mining Company | | 625.00 |
| "One mare 11 years old | | 35.00 |
| "One colt 1 year old | | 20.00 |
| "One old buggy | | 10.00 |
| "One old carriage | | 20.00 |
| "30 chickens | | 10.00 |

"Household furniture

"One bond and five shares of stock of The Con-
gress Hotel Company...................$ 500.00
"Check on hand and cash in banks at time
of decease.............................. 2,673.37

The total sum of the foregoing valuation is $3,993.37.

The cash in the bank was spent almost immediately in paying the widow's allowance, and the executor was required to borrow $2,100 on November 23 ,1913, and $2,500 on November 13, 1916, to pay claims. The only personal asset remaining as a part of the estate was the ten shares of the Masonic Building Association, now valued at $50. As counsel for defendant says: "Time has probably accounted for the mare that was eleven years old in 1912"; the colt was sold and accounted for; the chickens were eaten by members of the family, and the furniture divided between them; the gold mining stock was and is worthless; and the share in the Congress Hotel was sold and accounted for.

Smith admits that he received on several occasions a copy of the reports filed by the executor from time to time, showing receipts and disbursements and balance on hand, and that he made no objection until May, 1936, when this action was instituted.

It also is not disputed that his mother received the $75 a month until she died, just prior to the beginning of this litigation, and that Smith made his home with her the five years preceding her death, although he described the relationship as working for his room and board. No suggested criticism of the administration of the estate appears during his stay with his mother.

Smith's contentions briefly stated are as follows: (1) That the warranty deed which he executed was intended as a mortgage. (2) That the remainder to the grandchildren was a vested interest, was not included in his deed, and that, therefore, he still has that interest. (3) That the warranty deed did not convey any interest in the personal property.

■ 1. Whatever may have been Smith's conception as to the character of the instrument he signed, he certainly is not entitled to have that deed cancelled in this proceeding; and, furthermore, all of the testimony, except his own bald statement, is to the effect that it was not a mortgage. The fact that most of the consideration was the amount secured by the deeds of trust against the property, indicate more definitely than words what the agreement was.

■ 2. By the same token, we cannot in this action volunteer to determine what interest, if any, Smith has in any real estate involved. As a basis for his entire cause of action, he relies on section 159, chapter 176, page 1669, volume 4, '35 C. S. A., C. L. §5295, which reads as follows: "In all cases where the words 'persons in interest' are used herein, they shall be deemed to mean ward, heir, legatee, devisee, creditor of such estate, or personal representative for minor or mental incompetent, where estates are in process of administration."

■ ■ The primary source of this language is to be found in section 3, chapter 176 of the Session Laws of Colorado, 1915, being part of an act relating to the sale and mortgaging of real estate belonging to estates of decedents, which said act repealed certain specific sections theretofore in force, but did not repeal section 7190, R. S. 1908 ('35 C. S. A., vol. 4, c. 176, §188) which sets forth the circumstances under which a sale of real estate may be avoided. And since Smith has not presented any legal grounds upon which the sale could be avoided, we cannot here determine that he has any interest; but even if he had, he would be estopped from urging it in this action because of his failure to respond to the notices which he received. While estoppel is not specifically pleaded, the facts on which it is based were clearly established by the testimony, and although title to real estate is not lost by failure of the owner to assert his claim thereto, all of the other circumstances here present do estop him in equity from asserting it to the prejudice

of the several people who have acquired interests by virtue of the sale. *Van Wagenen v. Carpenter*, 27 Colo. 444, 61 Pac. 698.

In any event, Smith admits assigning his interest in the real estate, and, for obvious reasons, we cannot here pass upon the title.

3. We may admit, for the purposes of this opinion, that Smith's warranty deed did not cover the personal property, and that the record discloses that he might have some sort of an interest in ten shares of stock in the Masonic Building Association—the ten shares having an alleged value of $50; yet, since he failed to show that he is entitled to it, he has no cause of action against the bank. *Smith v. Smith*, 13 Colo. App. 295, 57 Pac. 747. It is true that some of the personal property has not been sold. It should have been sold before there was a resort to sale of the real estate; but since whatever the personalty might have brought at a sale would have made no difference as to the necessity for a sale of real property to pay debts, that matter is immaterial here, and the court apparently concluded that it had been absorbed by the expenses of administration.

Be that as it may, the preponderance of the evidence established, and the court found, that Smith, for a valuable consideration, compromised all his interest in the estate. Three witnesses testified that he told them "he was out of it," and the only contradiction of this testimony was his own denial.

An heir "may relinquish his rights by an express waiver or release or by estoppel," and as between the parties the renunciation may be in any form which they adopt. 18 C. J. 867, §117. "In the absence of fraud, undue influence or mistake [none of which is urged here] releases between coheirs of their rights in real or personal property, and agreements entered into between them for a division of the estate are valid and will be enforced." Id. 888, §158. "Compromises having for their object the settlement of family difficul-

ties or controversies are favored at law and in equity if at all reasonable.'' 12 C. J. 322.

It is immaterial upon which side the right ultimately proves to be. The compromise may be sustained, although it afterward develops that the right is on the other side. *Swem v. Green*, 9 Colo. 358, 12 Pac. 202. We paraphrase some of the language in that case found on page 360: ''Respecting the compromise agreement so stoutly denied'' by plaintiff in error on the trial below, the testimony of Emma F. Smith is fully corroborated by her attorney, Harry P. Vories who testified it was made in his office and in his presence.

We deem it unnecessary to discuss other issues sought to be raised.

The judgment is affirmed.

Mr. Chief Justice Burke, Mr. Justice Hilliard and Mr. Justice Holland concur.