**PREMIER BANK, a Colorado corporation, Plaintiff–Appellee,**

v.

**BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF BENT, Defendant–Appellant.**

No.  08CA2384.

Colorado Court of Appeals, Div. II.

June 11, 2009.

Moye White LLP, William F. Jones, James Belgum, Denver, Colorado, for Plaintiff–Appellee.

Mark MacDonnell, Bent County Attorney, Las Animas, Colorado; Law Office of Paul Zogg, Paul Zogg, Boulder, Colorado, for Defendant–Appellant.

Opinion by Chief Judge DAVIDSON.

In this lien priority dispute defendant, Bent County Board of County Commissioners, appeals from the trial court's declaratory judgment finding defendant's lien to be junior in priority to the lien of plaintiff, Premier Bank. The court based its determination of priority on section 38–30–104, C.R.S.2008, the after-acquired interest statute. We reverse and remand.

## I. Background

The property at issue was acquired in 1998 by Rodney Poland (husband). In 1999, husband executed a quitclaim deed conveying

undivided one-half interests in the property to him and Donna Poland (wife), as joint tenants with right of survivorship. In 2001, husband executed a deed of trust on the property, in his name only, to secure indebtedness to the Bank in the amount of $1,100,000. In 2002, husband and wife executed a deed of trust on the entire property, in lieu of a supersedeas bond, in favor of the County, in the amount of $384,267, as the result of litigation between the County and a company owned by husband.

The County recorded the deed of trust on January 13, 2003. Wife then deeded her interest in the property back to husband by quitclaim deed recorded on July 1, 2003. The deed of trust executed by husband in 2001, individually and in favor of the Bank, was then modified to reflect indebtedness of $759,779, and recorded on April 15, 2004.

The Bank filed this action against the County, seeking a declaratory judgment that its lien was prior to and superior to the County's lien as to the entire property. The County responded that although the Bank's 2001 lien was recorded first, it only gave the Bank priority over the County's lien as to the undivided one-half interest possessed by husband when he executed that deed of trust in his individual name. The County maintained that its lien, recorded in 2003, had priority as to the undivided one-half interest possessed by wife when she executed the deed of trust in favor of the County.

## II. The Trial Court Ruling

### A. Under Race–Notice, the County's Lien on Wife's One–Half Interest in the Property Had Priority.

The trial court agreed with the County that when it recorded its lien on the entire property in 2003, wife's undivided one-half interest was unencumbered because husband, as a joint tenant, could not affect wife's interest. It also agreed with the County that when wife quitclaimed her interest back to husband, it was subject to the County's lien. Finding that the County's lien was the first recorded on wife's then undivided one-half interest, and that the County had no notice of any prior unrecorded lien on that portion

of the property, the court concluded that under Colorado's race-notice provisions, section 38–35–109, C.R.S.2008, the County's lien was senior in priority to the bank's lien.

Neither party challenges this portion of the court's ruling, and based on the undisputed documents in the record, we agree that it was correct. *See Nile Valley Fed. Sav. & Loan Ass'n v. Security Title Guarantee Corp.*, 813 P.2d 849, 851–52 (Colo.App.1991) (section 38–35–109 is a race-notice statute and recorded documents are deemed notice to the world); *Fort Lupton State Bank v. Murata*, 626 P.2d 757, 759 (Colo.App.1981) (lien priority established by order of filing); *see also Sant v. Stephens*, 753 P.2d 752, 759–60 (Colo.1988) (lien on one joint tenant's interest does not affect the interest of the other); *Rocky Mountain Fuel Co. v. George N. Sparling Coal Co.*, 26 Colo.App. 260, 265–66, 143 P. 815, 818 (1914) (transferee acquires that which transferor possessed).

### B. The Trial Court Changed Lien Priority Pursuant to the After–Acquired Interest Statute.

The after-acquired interest statute, section 38–30–104, was enacted in 1861, before Colorado statehood, and has not been subsequently amended. It was last cited in 1928. *Colo. Trout Fisheries, Inc. v. Welfenberg*, 84 Colo. 592, 273 P. 17 (1928). It provides as follows:

> If any person sells and conveys to another by deed or conveyance, purporting to convey an estate in fee simple absolute, any tract of land or real estate lying and being in this state, not being possessed of the legal estate or interest therein at the time of the sale and conveyance and, after such sale and conveyance, the vendor becomes possessed of and confirmed in the legal estate of the land or real estate so sold and conveyed, it shall be taken and held to be in trust and for the use of the grantee or vendee, and said conveyance shall be held and taken, and shall be as valid as if the grantor or vendor had the legal estate or interest at the time of said sale or conveyance.

Relying on this provision, the trial court determined that, notwithstanding the Coun-

ty's priority as to wife's undivided one-half interest under race-notice, the Bank's lien had priority as to the entire property. It reasoned that, although husband only owned an undivided one-half interest in the property when he executed the 2001 deed of trust to the Bank, because he had in that document "purported to convey land in fee simple absolute," upon acquisition of the other one-half interest from wife in 2003—the "after-acquired property"—and modification of the 2001 deed of trust in 2004, the Bank's 2004 lien on the entire property related back to the 2001 deed of trust and, therefore had priority over the County's 2003 lien.

The County filed this appeal.

### III. Standard of Review

Because the interpretation of a deed is a question of law, *see Gilpin Inv. Co. v. Blake,* 712 P.2d 1051, 1053 (Colo.App. 1985), as is statutory interpretation, *see Hendricks v. People,* 10 P.3d 1231, 1235 (Colo. 2000), our review is de novo. *See Evans v. Romer,* 854 P.2d 1270, 1274 (Colo.1993) (judgments generally reviewed for abuse of discretion are subject to appellate review de novo when only questions of law are presented); *Alley v. McMath,* 140 Colo. 600, 602, 346 P.2d 304, 305 (1959) (when evidence consists solely of documents and the determinative question concerns the interpretation of those documents, issue raised is one of law).

### IV. Merits

The County contends that the trial court improperly interpreted the after-acquired interest statute to give priority to the Bank's lien. We agree. We conclude that the statute was inapplicable because husband's 2001 deed of trust (1) did not involve a transfer of title and (2) did not "purport to convey an estate in fee simple absolute." Furthermore, even assuming the statute were applicable, we would conclude that the trial court erred in altering the lien priority dates because section 38–30–104 does not address or affect lien priority. Because section 38–30–104 is 148 years old, and has not been cited in a Colorado appellate decision for over 80 years, we will address each of our reasons as alternative bases for reversal.

Our primary goal in determining the meaning of a statute is to ascertain and give effect to the intent of the legislature. *Danielson v. Castle Meadows, Inc.,* 791 P.2d 1106, 1111 (Colo.1990). We read the words and phrases in a statute in context and accord them their plain and ordinary meaning. *Scoggins v. Unigard Ins. Co.,* 869 P.2d 202, 205 (Colo.1994).

#### A. Application of the After–Acquired Interest Statute

##### 1. The 2001 deed of trust merely created a lien.

By its plain terms, the after-acquired interest statute is applicable only when the original transaction consists of a transfer of title to real property by sale or conveyance. *See* § 38–30–104 ("any person sells and conveys to another by deed or conveyance" land the legal estate or interest in which is not in the seller's possession and "after such sale and conveyance" acquires the "land or real estate so sold and conveyed"); *Van Wagenen v. Carpenter,* 27 Colo. 444, 458–59, 61 P. 698, 703 (1900) (after-acquired interest statute confirms "in the grantee any legal estate or interest subsequently acquired by the grantor *which was intended to be conveyed*" (emphasis added)). As relevant here, a conveyance is the transfer of title to land from one person to another by delivery and acceptance of a deed. *Stagecoach Prop. Owners Ass'n v. Young's Ranch,* 658 P.2d 1378, 1381 (Colo.App.1982).

Here, because it was a deed of trust, the 2001 document could not have purported to transfer title of the property from husband to the Bank but, rather, secured payment of indebtedness by transfer to the public trustee. That transaction was not a conveyance, *see* § 38–35–117, C.R.S.2008 (deeds of trust and mortgages "shall not be deemed a conveyance"); *Taylor v. Canterbury,* 92 P.3d 961, 966 (Colo.2004) (mortgaging a property does not involve a transfer of title); *Reid v. Pyle,* 51 P.3d 1064, 1067 (Colo.App.2002) ("No instrument intended to secure the payment of a debt shall be deemed a conveyance, regardless of its terms."); *Hohn v. Morrison,* 870 P.2d 513, 516 (Colo.App.1993) (deed

of trust does not convey title), but merely created a lien on the property in favor of the Bank. *See Webster v. Mauz,* 702 P.2d 297, 298 (Colo.App.1985) (execution and delivery of a deed of trust is not a conveyance of an interest, it is a lien); *see also* § 38–35–117, C.R.S.2008 (beneficiary of deed of trust cannot obtain possession of the real property absent foreclosure and sale; it merely has a lien).

> 2. Husband's 2001 deed of trust did not purport to convey an interest in fee simple absolute.

>> a. The statute does not apply to quitclaim transactions.

The after-acquired interest statute applies only to purported conveyances of land or estates in fee. § 38–30–104 ("If any person sells and conveys to another by deed or conveyance, purporting to convey an estate in fee simple absolute . . . ."); *see Rittmaster v. Brisbane,* 19 Colo. 371, 374–75, 35 P. 736, 737 (1894) (statute has no application except where "deed purports to convey an estate in fee simple absolute").

■ The conveyance of a fee simple interest is generally accomplished by describing the grant as consisting of "the following real property" or some other description of the land. *See, e.g., Kanarado Mining & Dev. Co. v. Sutton,* 36 Colo.App. 375, 379, 539 P.2d 1325, 1327 (1975) (grant of "all the following described lots" conveys fee simple to grantee). Such a conveyance carries with it covenants and warranties on the part of the grantor. *See* § 38–30–113, C.R.S.2008 (statutory form deed reciting the conveyance of "the following real property" is a conveyance of fee simple with covenants and warranties).

■ Quitclaim language, however, only purports to convey the grantor's present interest; it makes no title warranty of any kind. *See Rittmaster,* 19 Colo. at 374–75, 35 P. at 737 (deed was a quitclaim because it only purported to convey the right, title, or interest grantor possessed, rather than the land itself or an estate in fee simple absolute); *Tuttle v. Burrows,* 852 P.2d 1314, 1315–16 (Colo.App.1992) (quitclaim deed, transferring right, title, and interest of

grantor, conveys just that, grantor's present interest); 1 W. Carpenter, *Colorado Real Estate Practice* § 3.2, at 301 (2008) (quitclaim "conveys whatever interest the grantor has in the property, if any at all"). It necessarily follows, then, that the after-acquired interest statute does not apply to such conveyances. *See Michaelson v. Michaelson,* 939 P.2d 835, 839–40 (Colo.1997) (quitclaim only conveys grantor's present interest, and does not include a promise to convey after-acquired property); 2 Krendl, *Colorado Methods of Practice,* Deeds § 64.2, at 287–88 (5th ed. 2007) (grantor conveying by quitclaim makes no warranty as to what is conveyed and does not convey after-acquired title); Annotation, *Nature of Conveyance or Covenants Which Will Create Estoppel to Assert After-acquired Title in Real Property,* 144 A.L.R. 554 (1943) (general rule well established that a purported conveyance by quitclaim deed does not invoke application of the after-acquired title doctrine).

>> b. The granting clause of the 2001 deed only conveyed a quitclaim interest.

■ The granting clause used quitclaim language, providing: "Grantor hereby irrevocably grants, transfers and assigns to Trustee for the benefit of Lender as Beneficiary *all of Grantor's right, title, and interest in and to the following described real property* . . ." (emphasis supplied). Such language does not purport or promise to convey land or an estate in fee, but only that which husband actually owned at the time. Although the trial court apparently relied on the warranty clause of the 2001 deed of trust—which provided that grantor "holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances"—it is the granting clause, not the warranty clause in a deed that describes the nature of the interest conveyed. *O'Brien v. Village Land Co.,* 794 P.2d 246, 251 (Colo.1990) (granting clause defines and designates the interest conveyed; warranty clause defines the scope of the guarantee made by the grantor to the grantee). And, to the extent that there is any conflict between the warranty clause and the granting clause, the latter controls. *See Mil-*

*lion v. Botefur*, 90 Colo. 343, 345, 9 P.2d 284, 284 (1932) (clear unequivocal language in a granting clause controls contradictory terms in other clauses); *Millage v. Churchill*, 69 Colo. 457, 460–61, 195 P. 107, 109 (1921) (granting clause controls); *see also Hruby v. Wayman*, 230 Iowa 653, 298 N.W. 639, 640–41 (Iowa 1941) (covenants do not control the granting clause).

### B. Section 38–30–104 Does Not Affect Lien Priority Under Race–Notice.

It is undisputed that, when husband acquired wife's interest, it was encumbered by the lien granted by wife in favor of the County; that lien remains, attaching to wife's former one-half undivided interest; and, because it was recorded before the Bank's lien, under race-notice provisions, the County's lien has priority. *See Fort Lupton State Bank*, 626 P.2d at 759 (discussing lien priority); *see also Temple Hoyne Buell Foundation v. Holland & Hart*, 851 P.2d 192, 196 (Colo.App.1992) (a grantor can convey no more rights in property than he himself owns); *Rocky Mountain Fuel Co.*, 26 Colo. App. at 266, 143 P. at 818 ("No one can transfer a better title than he himself possesses.").

■■ The Bank argues, however, that section 38–30–104 trumps the priority set according to race-notice, specifically, that the after-acquired interest statute applied to set the date of husband's original transaction as the priority date of the Bank's lien as to any after-acquired property, regardless that it was encumbered by the County's lien when acquired. We disagree. To the contrary, the after-acquired interest statute does not affect lien priorities and the trial court erred in relying upon it to reverse the priorities otherwise established here under race-notice.

Race-notice is the linchpin of Colorado real estate law. *See Strekal v. Espe*, 114 P.3d 67, 73 (Colo.App.2004) (recording act carries out "longstanding and substantial features of real estate law" by protecting the security of real estate titles in Colorado). Its purpose is to enable a buyer or mortgagee, by analysis of the chain of title, to determine exactly what it is acquiring. *See Lobato v. Taylor*, 71 P.3d 938, 964–65 (Colo.2002); *see also Page v.*

*Fees–Krey, Inc.*, 617 P.2d 1188, 1193 (Colo. 1980) (recording act permits reliance "on the condition of title as it appears of record" and "promote[s] creation of an accessible history of title").

■■■ The purpose and scope of section 38–30–104 are far narrower. The statute is a codification of the common law rule that "[w]here one conveys lands with warranty, but without title, and afterwards acquires one, his first deed works an estoppel." *Phillippi v. Leet*, 19 Colo. 246, 251–52, 35 P. 540, 541 (1893) (quoting 3 *Washburn on Real Property* ¶ 50, at 118 (4th ed.)); *see also* Black's Law Dictionary 590 (8th ed. 2004) (estoppel by deed "prevents grantor of a warranty deed, who does not have title at the time of conveyance but who later acquires title, from denying that he or she had title at the time of transfer"). By its plain terms, it applies only to enforce a grantor's warranty to a grantee and its intent is to remedy the possibility that, in the grant of an estate in fee simple absolute, the grantor could still claim, as against the grantee, title to property that the grantor purported to convey but only acquired title to after the conveyance. *See Van Wagenen*, 27 Colo. at 458–59, 61 P. at 702 (purpose of after-acquired interest statute is to confer to the grantee "any legal estate or interest subsequently acquired by the grantor").

Thus, the statute merely serves to "bind" a grantor to the terms of the original purported conveyance and, contrary to the Bank's argument, it contains no language pertaining to or overriding the establishment of lien priorities under race-notice. *See United Blood Servs. v. Quintana*, 827 P.2d 509, 522 (Colo.1992) (a statute is to be construed so that the legislative purpose underlying its enactment is given effect); *People v. James*, 178 Colo. 401, 404, 497 P.2d 1256, 1257 (1972) ("If two acts of the legislature may be construed so that an inconsistency will be avoided, it is our duty to so construe them.").

Indeed, the effect of the Bank's interpretation would be that a purported grantor and grantee, neither of whom at the time of their transaction possessed any interest in a subsequently acquired fee simple estate, could

create a lien priority date on that interest senior to that of an otherwise recorded and perfected lien established in favor of a third party by the then actual owner of the fee simple estate prior to the grantor's subsequent acquisition of the interest. That result would not only turn the race-notice scheme upside-down, *see Fort Lupton State Bank,* 626 P.2d at 759 (lien priority established by order of filing), but also would be in obvious conflict with other fundamental provisions of real estate law, *see, e.g.,* §§ 38–35–201 to –04, C.R.S.2008; *GMAC Mortgage Corp. v. PWI Group,* 155 P.3d 556, 557–58 (Colo.App.2006) (lien resulting from a deed of trust acquired from party with no interest in the property is spurious, and recording of such is without legal effect); *cf.* § 38–35–201(4), C.R.S.2008 (spurious lien includes those not "agreed to by the owner of the property it purports to encumber"), as well as with a recognized exception to the common law after-acquired interest doctrine, from which section 38–30–104 was derived. *See, e.g., American Law of Property* § 15.22 (Title by Estoppel), at 851 (1952) (after-acquired title passes to grantee in the condition grantor acquires it, i.e., "subject to a mortgage to a third party").

Accordingly, although by 2004 the Bank had a valid lien on husband's after-acquired interest, we conclude that lien is junior to the County's lien on the one-half undivided interest in the property formerly held by wife. We further conclude that this lien priority is not altered by the provisions of the after-acquired interest statute.

The judgment is reversed and the case is remanded for entry of a declaratory judgment consistent with this opinion.

Judge STERNBERG * and JUDGE NEY * concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2008.