24CA0143 Estate of Carstens 03-27-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0143
Gunnison County District Court No. 21PR30047
Honorable J. Steven Patrick, Judge

---

In re the Estate of Derek North Carstens, deceased.

Renee Silverstone,

Appellant,

v.

Tyghe Carstens, Personal Representative, and Emma De Jongh,

Appellees.

---

ORDER AFFIRMED IN PART, APPEAL DISMISSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE LUM
Freyre and Grove, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 27, 2025

---

Garfield & Hecht, P.C., Christopher D. Bryan, Leah M. Gallant, Aspen,
Colorado, for Appellant

Hoskin Farina & Kampf, David A. Younger, Brent A. Starnes, Grand Junction,
Colorado, for Appellee Tyghe Carstens

Dufford Waldeck, Annie D. Murphy, Grand Junction, Colorado, for Appellee
Emma De Jongh

¶ 1    Appellant, Renee Silverstone, appeals the district court's orders removing real property from the estate inventory of Derek North Carstens (the decedent) and awarding attorney fees.  We affirm in part and dismiss the appeal in part.

## I.    Background

¶ 2    The primary dispute in this case is whether the decedent's one-half interest in a parcel of real property passed to Silverstone (the decedent's wife) by his most recent will or instead transferred to his daughter, Emma De Jongh, via a beneficiary deed.

¶ 3    The real property at issue was previously owned wholly by the decedent and is situated in Crested Butte (the property).[1]  In 2013, the decedent hired David Leinsdorf, an attorney specializing in real estate law, to help convey one-half of the decedent's interest in the property to the DJ Trust, of which Silverstone is a trustee and beneficiary.

¶ 4    In 2015, the decedent simultaneously executed two estate planning documents drafted by Leinsdorf: an agreement between

---

[1] The decedent was a South African citizen and lived in South Africa at the time of his death.  His only asset in the United States was the property, which is named "Lots 15 and 16, ELK RUN SUBDIVISION."

the decedent, Silverstone, and the DJ Trust (the Agreement) and the decedent's will (the 2015 Will). Leinsdorf recorded the Agreement approximately a week after both documents were executed.

¶ 5    The Agreement and the 2015 Will contain inconsistent provisions regarding the disposition of the property. The Agreement provides, "If [the decedent] predeceases Silverstone, [the decedent's] one-half (1/2) interest in the Property will pass to his daughter [Emma De Jongh]." Silverstone would have a life estate in the whole property and options to buy De Jongh's interest or sell the property and pay De Jongh one-half of the proceeds. In contrast, the 2015 Will provides that the decedent's "entire interest" in the property would pass to Silverstone if she survived him and to De Jongh if Silverstone predeceased him.

¶ 6    After being diagnosed with terminal cancer, the decedent wrote three new wills in 2020 and 2021. Each will had a provision that bequeathed his one-half interest in the property to Silverstone.

¶ 7    After the decedent's passing, Tyghe Carstens, the decedent's son, petitioned for formal probate, and the district court appointed him as personal representative of the estate. Carstens filed an estate inventory, listing the property as an asset. De Jongh

2

objected and moved to exclude the property from the estate inventory, claiming that the Agreement was a beneficiary deed that conveyed the property to her outside of probate. The court granted the motion, ruling that the Agreement was a beneficiary deed.

¶ 8    Silverstone then moved for reconsideration, which the court denied, and she appealed. *See In re Estate of Carstens*, (Colo. App. No. 22CA0297, May 25, 2023) (not published pursuant to C.A.R. 35(e)).

¶ 9    A division of this court concluded that, because of the conflicting terms in the Agreement and the 2015 Will, the Agreement was ambiguous as to the one-half interest in the property, and it wasn't clear whether the decedent had intended for the Agreement to operate as a beneficiary deed. *Id.* at ¶¶ 13-21; *see Bledsoe v. Hill*, 747 P.2d 10, 12 (Colo. App. 1987) (considering together two documents written about the same subject matter that were simultaneously executed between the same parties). The division remanded for the district court to hold an evidentiary hearing and admit extrinsic evidence to determine the parties' intent. *Carstens*, No. 22CA0297, slip op. at ¶ 22. Because it decided the case on ambiguity, the division didn't reach the

question of whether the Agreement satisfied the statutory requirements to be considered a beneficiary deed. *Id.* at ¶ 17.

¶ 10 After the remand hearing, the court found that (1) the conflict between the Agreement and the 2015 Will was due to a scrivener's error; (2) the decedent had intended to transfer the property to De Jongh outside probate; and (3) the Agreement met the statutory requirements of a beneficiary deed. The court also ruled that Carstens and De Jongh were entitled to recovery of their costs and attorney fees but stayed the determination of the final amount of fees pending this appeal.

¶ 11 Silverstone now appeals, asserting that the district court erred by (1) finding that the decedent had intended to create a beneficiary deed; (2) concluding that the Agreement satisfied the statutory formation requirements; and (3) awarding attorney fees.

## II. Standard of Review

¶ 12 "When a court enters a judgment following a bench trial, that judgment presents a mixed question of law and fact." *State Farm Mut. Auto. Ins. Co. v. Johnson,* 2017 CO 68, ¶ 12. We review the interpretation of statutes, deeds, and recorded instruments de novo. *Premier Bank v. Bd. of Cnty. Comm'rs,* 214 P.3d 574, 577

(Colo. App. 2009); *Kroesen v. Shenandoah Homeowners Ass'n*, 2020 COA 31, ¶ 31.

### III. Decedent's Intent

¶ 13    Silverstone contends that the district court erred by finding that the decedent intended for the Agreement to operate as a beneficiary deed. We disagree.

### A. Applicable Law and Standard of Review

¶ 14    When construing a contract, deed, or other written instrument, our primary goal is "to ascertain the intention of the parties from the instrument as a whole." *Farmers Reservoir & Irrigation Co. v. Sun Prod. Co.*, 721 P.2d 1198, 1199 (Colo. App. 1986); *see Hess v. Hobart*, 2020 COA 139M2, ¶ 14 ("Like contracts, deeds are generally construed in accordance with the general rules of construction of written instruments.").

¶ 15    Intent is normally determined from the instrument's plain language. *French v. Centura Health Corp.*, 2022 CO 20, ¶ 25. But where, as here, the instrument is ambiguous, "evidence beyond the [instrument's] four corners . . . is admissible to establish the parties' intent." *Id.* In this instance, the determination of the parties' intent is a question of fact. *Gagne v. Gagne*, 2014 COA

127, ¶ 52; *see also ADT Sec. Servs., Inc. v. Premier Home Prot., Inc.*, 181 P.3d 288, 296 (Colo. App. 2007) (noting that interpretation of terms of an ambiguous deed is a question of fact).

¶ 16　　We review findings of fact for clear error, upholding the findings if there is any evidence in the record supporting them. *In re Estate of Breeden*, 87 P.3d 167, 172 (Colo. App. 2003); C.R.C.P. 52. And as trier of fact, the district court determines the sufficiency, probative effect, credibility, and weight of the evidence. *Breeden*, 87 P.3d at 172. "When the evidence is conflicting, a reviewing court may not substitute its conclusions for those of the trial court merely because there may be credible evidence supporting a different result." *Id.*

## B.　Additional Facts

¶ 17　　At the remand hearing, Leinsdorf testified as follows:

- In 2013, in addition to assisting the decedent with the conveyance of one-half of the property to the DJ Trust, he also helped the decedent draft a will (the 2013 Will) that transferred the decedent's remaining one-half interest to Silverstone upon his death.

- In 2015, the decedent emailed Leinsdorf with express instructions to revise his will. Specifically, the decedent wanted Leinsdorf to change the provision of the 2013 Will that gave "[the decedent's] entire interest in [the property] to [Silverstone]" so that the new will would "reflect[] the new agreement" that transferred the property interest to De Jongh in the event that the decedent predeceased Silverstone.

- Leinsdorf accidentally failed to incorporate this change into the 2015 Will; as a result, the 2015 Will and the Agreement had conflicting terms.

- At the time of the Agreement's execution, the decedent had intended to transfer the property to De Jongh upon his death in order to ensure she was taken care of.

- The Agreement "has the same effect as a beneficiary deed" and "provides for disposition of property outside of probate."

- He recalled that the parties understood that the Agreement would be recorded and that the decedent knew the reason for the recording.

The decedent's emails to Leinsdorf were also admitted into evidence.

¶ 18    Silverstone presented testimony from the decedent's friend, Peter Hamilton Flack, and his wealth manager, James Arnold, who testified that by 2021 the decedent intended to give the property to Silverstone upon his death, as indicated by the 2020 and 2021 wills. They also testified that the decedent never discussed the Agreement with them. Silverstone also called Birgit Brammer to testify as an expert about how South African law does not possess legal devices similar to beneficiary deeds. And Jamie Roth, an expert in estate planning and probate, testified that she believed the Agreement did not comport with the requirements for a beneficiary deed.

¶ 19    The district court found that the ambiguity arising out of the conflict between the Agreement and the 2015 Will resulted from a scrivener's error and that the decedent intended for his one-half interest in the property to pass to De Jongh upon his death.

### C.    Analysis

¶ 20    The record supports the district court's findings.

¶ 21    Leinsdorf's testimony and the decedent's emails amply support the court's findings that the conflicting 2015 Will provision that gave rise to the ambiguity was a scrivener's error and that the

decedent intended that his one-half of the property would transfer to De Jongh upon his death. The record also supports the court's implied finding that the decedent intended for the property to pass outside of probate via a beneficiary deed because (1) the decedent executed the Agreement at the same time as the 2015 Will; (2) Leinsdorf testified that he had "every reason to believe that the [d]ecedent thought the [Agreement], unless modified, would be a disposition of the . . . property outside of probate"; and (3) Leinsdorf testified that he thought the decedent knew the Agreement would be recorded and why.

¶ 22    We aren't persuaded otherwise by Silverstone's arguments that the testimony from other witnesses demonstrated that the decedent intended to convey the property to Silverstone or that he didn't intend for (or understand) the Agreement to be a beneficiary deed. Likewise, we reject her reliance on some of Leinsdorf's confusing and occasionally contradictory testimony about the Agreement's title versus its function. While such evidence could indeed indicate a contrary intent or tend to discredit some of Leinsdorf's statements, we may not second-guess the district court's resolution of evidentiary conflicts or the weight and

9

credibility it gave to Leinsdorf's testimony. *See id.*; *In re Estate of Romero*, 126 P.3d 228, 231 (Colo. App. 2005) ("Evaluation of the credibility of witnesses . . . is a matter solely within the fact finding province of the trial court . . . .").

¶ 23 Lastly, Silverstone asserts that the record doesn't support a conclusion that the decedent understood a beneficiary deed's revocation procedures and effects on subsequent wills. But the decedent's intent to enter into a beneficiary deed doesn't require detailed knowledge of all legal ramifications associated with it. *Cf. Hogsett v. Neale*, 2021 CO 1, ¶ 54 ("Parties asserting a common law marriage need not prove that they had detailed knowledge of and intent to obtain all the legal consequences that attach to marriage."). Indeed, the statutory language for the optional form of beneficiary deed doesn't warn the grantor that the beneficiary deed will override prior and subsequent wills, nor that it can only be revoked by a recorded instrument. *See* § 15-15-404, C.R.S. 2024.

¶ 24 For these reasons, we conclude that the court's findings about the decedent's intent weren't clearly erroneous.

## IV. Statutory Requirements

¶ 25    Silverstone next contends that the district court erred by determining that the Agreement met the statutory requirements for a beneficiary deed under sections 15-15-402 and -404, C.R.S. 2024. We disagree.

¶ 26    We review the district court's statutory interpretation de novo. *Premier Bank*, 214 P.3d at 577. Our primary objective "is to ascertain and effectuate the General Assembly's intent." *In re Estate of Arnold*, 2024 COA 44, ¶ 10. To do that, we begin with the statute's plain language, giving that language its commonly accepted and understood meaning. *Id.* If the statutory language is unambiguous — as it is here — we apply it as written. *Id.* We also review de novo the court's application of the statute to the facts of this case. *See id.* at ¶ 9.

¶ 27    A beneficiary deed is a deed that "conveys an interest in real property and which contains language that the conveyance is to be effective upon the death of the owner." § 15-15-401(1), C.R.S. 2024. Deed means "*any* instrument of conveyance of real property." § 15-15-401(2) (emphasis added). An "instrument" is a

11

"written legal document that defines rights, duties, entitlements, or liabilities." Black's Law Dictionary 948 (12th ed. 2024).

¶ 28 A beneficiary deed must be "signed by the owner of [a real property] interest, as grantor, designating a grantee-beneficiary of the interest," § 15-15-402(1), and recorded "prior to the death of the owner in the office of the clerk and recorder," § 15-15-404(1). The deed must "contain[] the words 'conveys on death' or 'transfers on death' *or otherwise indicate*[] the transfer is to be effective on the death of the owner." *Id.* (emphasis added). The deed "*may* be in substantially" the form described by the statute. *Id.* (emphasis added).

¶ 29 The Agreement (1) is a written document that defines rights, duties, and entitlements; (2) is signed by the decedent; (3) designates De Jongh as the recipient of the decedent's one-half interest in the property; and (4) contains language indicating that a transfer of the decedent's one-half interest in the property will be effective upon his death. Specifically, the Agreement says that "[i]f the decedent predeceases Silverstone, [the decedent's] one-half (1/2) interest in the [p]roperty will pass to his daughter, Emma [de Jongh]," with Silverstone retaining a life estate and certain rights to

12

buy or sell the property.  Finally, the Agreement was recorded with the Gunnison County Clerk and Recorder before the decedent's death.

¶ 30     Silverstone contends that the Agreement did not clearly indicate a conveyance of property because it wasn't titled as a "beneficiary deed"; didn't contain the words "conveys on death" or "transfers on death"; lacked other terms, such as "grantor"; and passively described the property's transfer with the phrase "will pass" rather than indicating the decedent's affirmative act to transfer the property through verbs such as "gives," "transfers," or "conveys."  We acknowledge that the Agreement isn't a paragon of clarity, and it would certainly be better practice to use a form similar to the one suggested in the statute.  However, the statutory language doesn't require a beneficiary deed to have a specific title or other "magic words."  It must simply contain language that "*otherwise indicates*" that a property transfer is to be effective upon a decedent's death.  § 15-15-404(1) (emphasis added).  The Agreement's language that the decedent's one-half interest "will pass" to De Jongh "if [the decedent] predeceases Silverstone" is sufficient to meet that statutory directive.  *See id.*

¶ 31     Next, Silverstone argues that the statute's requirements, although necessary, are not sufficient to establish that the Agreement was a beneficiary deed.  In support of this argument, she advances policy concerns about the wide range of documents that might inadvertently become beneficiary deeds, conflicting with other statutes and overriding wills.  We share some of those concerns.  Nevertheless, to accept Silverstone's argument would oblige us to read requirements into the statute that don't exist, which we can't do.  *Dubois v. Abrahamson*, 214 P.3d 586, 588 (Colo. App. 2009).  So we construe the conditions for a beneficiary deed only in accordance with the statute's plain language, not according to unwritten requirements.  *See Arnold*, ¶ 10.

¶ 32     Relying on *Fischbach v. Holzberlein*, 215 P.3d 407 (Colo. App. 2009), Silverstone next argues that the Agreement cannot be a beneficiary deed because it contains "reciprocal promises by the DJ Trust."  In *Fischbach*, the division held that a trust could not convey property via a beneficiary deed.  *Id.* at 409.  As a result, the division concluded that a purported beneficiary deed in which a trust was the grantor was invalid and couldn't be reformed.  *Id.*  As best we understand her, Silverstone contends that, because the Agreement

14

also contains language indicating a conveyance of property from the DJ Trust to the decedent if Silverstone died first, the entire Agreement — including the grant from the decedent to De Jongh — is not a valid beneficiary deed.

¶ 33 However, this argument misreads the Agreement. Unlike the provision for De Jongh, the Agreement contains no language conveying the DJ Trust's one-half interest in the property to the decedent upon anyone's death. The Agreement says that if Silverstone predeceases the decedent, the decedent will have a life estate in the property and certain rights to buy the trust's one-half property interest or sell the whole property (his interest and the trust's interest) and pay the trust one-half of the proceeds.[2]

¶ 34 Lastly, because it wasn't preserved, we don't address Silverstone's contention about the Agreement improperly lacking a legal address. *See Est. of Stevenson v. Hollywood Bar & Cafe, Inc.*,

---

[2] Silverstone's argument also stretches the holding in *Fischbach v. Holzberlein*, 215 P.3d 407, 409 (Colo. App. 2009). *Fischbach* didn't address the circumstances that Silverstone contemplates: a single instrument containing two grants — one validly made by an individual and one that is invalid because it was made by a trust. Thus, *Fischbach* doesn't stand for the principle that an invalid grant dooms a separate, otherwise-valid grant simply because they were both contained in the same instrument.

15

832 P.2d 718, 721 n.5 (Colo. 1992) ("Arguments never presented to, considered or ruled upon by a trial court may not be raised for the first time on appeal.").

## V. Attorney Fees

¶ 35    The district court awarded attorney fees against Silverstone according to the Agreement's fee-shifting provision but stayed the resolution of the amount of fees pending the outcome of this appeal. Silverstone requests we reverse the court's award of costs and fees if we determine that the Agreement is a beneficiary deed. However, because the attorney fee award isn't final, we lack jurisdiction to consider her request. *See Guy v. Whitsitt*, 2020 COA 93, ¶ 34 ("Because no amount of attorney fees has yet been awarded, there is no 'final' appealable order with respect thereto." (quoting *Williams v. Dep't of Pub. Safety*, 2015 COA 180, ¶ 114)).

¶ 36    We therefore dismiss this portion of Silverstone's appeal without prejudice.

## VI. Appellate Attorney Fees

¶ 37    Carstens requests appellate attorney fees "as provided in the Agreement" because the Agreement contains a prevailing-party provision and he is a prevailing party. We agree, and we remand to

the district court for determination of his reasonable attorney fees incurred on appeal.

## VII.   Disposition

¶ 38     We affirm the order removing the property from the estate and dismiss without prejudice Silverstone's appeal of the district court's attorney fees order.  The case is remanded for the calculation and award of Carstens' appellate attorney fees.

JUDGE FREYRE and JUDGE GROVE concur.