24CA1075 Estate of Kehmeier 05-22-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1075
Delta County District Court No. 22PR5
Honorable Steven L. Schultz, Judge

In re the Estate of Fletcher Kehmeier, deceased.

Thomas Kehmeier,

Appellant,

v.

Mariel Kehmeier,

Appellee.

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE FREYRE
Gomez and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 22, 2025

Belzer Law, Aaron B. Belzer, Ashlee N. Hoffmann, Boulder, Colorado, for
Appellant

Kelly and Fronapfel Law, PC, Jon L. Kelly, Christine M. Kelly, Zachary R.
Fronapfel, Dolores, Colorado, for Appellee

¶ 1     Thomas Kehmeier, as the personal representative of the estate of his father, Fletcher Kehmeier, appeals the probate court's order finding that the Colorado family ranch must pass to him; his brother, Steven Kehmeier; and the estate of his deceased brother, Bill Kehmeier, as tenants in common.  We reverse the order.

## I.     Background

¶ 2     Fletcher passed away on December 18, 2021, intestate. Fletcher's wife predeceased him.  Fletcher was survived by three sons — Steven, Thomas, and Bill.[1]  At the time of his death, Fletcher's estate contained real property located in Peachtree City, Georgia,[2] and a 1,200-acre ranch in Colorado.

¶ 3     During the probate proceedings, a dispute arose concerning a January 2020 warranty deed purportedly executed by Fletcher and recorded on March 28, 2022, that conveyed the family ranch to Steven and his wife, Austynn Kehmeier, as joint tenants.  At the next status conference, Bill and Thomas advised the court they

---

[1] The parties in this case all share the same last name so we refer to them by their first name.  We mean no disrespect.
[2] This property is not in dispute, and the co-personal representatives executed a deed conveying it to Bill on July 20, 2022.

intended to dispute the warranty deed.  The court then appointed

Thomas and Bill as co-personal representatives of Fletcher's estate.

¶ 4        At the next status conference, Bill and Thomas continued to

dispute the validity of the deed transferring the family ranch to

Steven and Austynn.  They asserted that Fletcher lacked the

capacity to convey the ranch in 2020 and believed he was subject to

undue influence.  The probate court set the matter for trial.

¶ 5        Before trial, the brothers reached an agreement, and Steven

filed a written settlement agreement with the court.  That

agreement provided:

Settlement Agreement.

1. All parties agree that the Deed of January 3, 2020 is not a valid transfer.
2. While all three brothers are living, to sell the equally held property requires a unanimous vote of 3. Afterwards by 2/3rds vote.
3. Real property inside and outside the Conservation easement will be used/sold by mutual agreement.
4. The existing house and structures will be used by mutual agreement. Whoever is living in the house will be responsible for upkeep, utilities, insurance.
5. Property Taxes after 3 years will be paid by whoever is living in the existing house if the other parties want to sell.
6. Equally held property shares can pass to heirs or via gift or will, and will count as one vote.
7. A property share can be sold by mutual agreement.
8. All parties request that the court reinstate it's finding of March 30th, 2022 concerning Fletcher W. Kehmeier's declaration of November 18, 2017 for the Georgia property pursuant to CRS 15-11-503.

¶ 6        On June 14, 2022, the court reviewed the settlement agreement with the brothers. It confirmed with each brother that their settlement agreement said they would own the family ranch as "tenants in common," "co-owners," or "co-tenants." Steven then asked whether tenancy in common was the same thing as joint tenancy. The probate court responded:

> No, they're different. And so, let me just explain some of that. I did review the agreement that the three of you submitted. That's not something that THE COURT would determine here as part of a probate proceeding. If I recall correctly, I've appointed

3

Bill and Thomas as the co-personal representatives [(PRs)]. The two of you as the PRs for the estate, would simply prepare a beneficiary deed from the estate to the three of you as co-tenants. You then become equal co-owners of that property, each with an undivided 1/3 interest. I did see there's a whole bunch of agreements as to what's going to happen with the property down the road. And if somebody lives there, what they have to pay for. None of that is something that the probate court would typically sign off on. You just become co-tenants going forward. And then you can reach whatever agreement you want to with respect to that property.

The other thing that the three of you need to know is as co-tenants you each own an undivided 1/3 of the property and any of the three of you could essentially force a sale of that property at any time.

. . . .

The situation is that without any type of will, the three of you take the Colorado property as tenants-in-common. Because there is no [will], you take it by [the] rules of intestate, because there's no will. All right. So, as the three children of the decedent, you each get an equal share.

The two ways to hold property in Colorado are [as tenants] in common, or [as] joint tenants with the right of survivorship. The default position now is tenants in common. What that means is that you each own a 1/3 undivided interest of that property. If something were to happen to one of the three of you, your

4

undivided 1/3 interest would go to your heirs, not to the other brothers.  Okay.

. . . .

That's tenants in common.  Joint tenancy with the right of survivorship, would be a situation where if something happened to you, that person's interest would go to the two survivors.  Because it's an intestate transfer here it would be a tenancy in common.  I don't know if the three of you could agree among yourselves to do a joint tenancy with a right of survivorship.  But that's something you can talk about.

The other thing you need to understand is the three of you become legal co-owners of the property.  That means that any one of the three of you could require the property to be sold, or divided among the three of you.

¶ 7    The probate court then asked the brothers how they wished to transfer the ranch, and Bill replied that he thought that a tenancy in common would be best.  This colloquy followed:

THE COURT: All right.  And that is the default in Colorado.  Steve, do you understand what that means?  So that —

STEVEN: So, if I die, my other two brothers get —

THE COURT: No.  If it's joint tenants with the right of survivorship —

BILL: No, no.

5

THE COURT: — then your two brothers would inherit your portion of the property.

STEVEN: Yeah, so if I die, my share goes to them.

THE COURT: If it were joint tenants with the right of survivorship. But it's not.

STEVEN: Oh, oh.

THE COURT: It's tenancy in common. Each of you own a third of that property. If you were to die, your third would pass to your heirs. Your wife or your children. Same for Bill, same for Thomas. All right.

I, normally, it is the purchasers that make the determination whether it's joint tenants with the right of survivorship, or tenants in common. The default under Colorado law is tenancy in common now. I would think in a probate proceeding where it is derived from an estate, I would think it would be tenants in common. *I think if the three of you agreed amongst yourselves you could convert it to a joint tenancy with a right of survivorship, but I don't think I can require you to do that. Since the default is tenancy in common.*

(Emphasis added.)

¶ 8 Steven continued to ask questions about a tenancy in common including how his interest in the ranch would pass, and ultimately, the court found:

With respect to the ranch here in Colorado, my understanding of the agreement is that the

parties are essentially setting aside any deed that was executed in favor of Steve and Austin KEHMEIER and the estate will now transfer the ranch property by way of a [personal representative] deed from the two co-personal representatives to the three siblings in equal amounts as tenants in common. Bill, is that your understanding?

¶ 9 Bill and Thomas confirmed this understanding, and Steven asked what the next steps were. The probate court said that Thomas and Bill would need to execute a personal representative's deed transferring the property from Fletcher's Estate to the three brothers.

In the probate court's June 14 order, the probate court found:

> The Court has previously appointed Bill and Thomas Kehmeier as co-personal representatives of the Estate . . . and authorized them to serve without bond. The Court hereby authorized the co-personal representatives to transfer the Ranch according to the rules of intestate success in equal parts to the three heirs of the decedent, Bill, Thomas and Steve Kehmeier. *Unless the parties agree otherwise, they shall hold the property as tenants in common.*

(Emphasis added.)

¶ 10 After the hearing, the three brothers orally agreed to hold the ranch as joint tenants with the right of survivorship rather than as

tenants in common. Additionally, they agreed that the co-representatives would execute the deed for the Georgia property first so that Bill could quickly sell it. Before the co-representatives could execute the deed to the ranch, however, Bill unexpectedly died while on vacation with his family in Argentina.

¶ 11 Mariel Kehmeier, as the personal representative of Bill's estate, asked the court to transfer title of the ranch to the surviving brothers and Bill's estate as tenants in common, pursuant to C.R.C.P. 70. She argued that Bill's unexpected death prevented the parties from drafting a new deed for the property. The probate court denied the request, stating, in part,

> The Court notes that the sole remaining personal representative of the FK Estate in Colorado, which is his brother Thomas Kehmeier, already has the authority to transfer Estate assets to the heirs by any means that he finds appropriate, including by way of a [personal representative] deed. There is no need for the Court to become involved unless a dispute arises.

¶ 12 At a status conference, the probate court asked whether Thomas, as the personal representative of Fletcher's estate, would be executing a personal representative's deed in favor of himself, Steven, and Bill's estate. Thomas and Steven then informed the

8

court of the oral agreement the three brothers reached before Bill's death to hold the ranch as joint tenants. Steven and Thomas also informed the court that Bill did not want the ranch to transfer to Mariel because they were going through a divorce. The probate court responded:

> Well, folks, the problem is a lot of this doesn't really matter because there is no deed that puts the property in the name of the three brothers in joint tenancy. And so the Court issued an order requiring you to transfer the property as tenants in common unless the parties greed otherwise. You could have determined — the three of you — to do a deed back then, but you would have had to reduce it down to writing and file it, and that did not happen. And so I don't think that you can come into Court and retroactively tell me that that was the agreement. It's not binding unless it's in writing.

¶ 13 The probate court recommended that Thomas and Steven hire legal counsel.

¶ 14 Counsel for Steven and Thomas filed a written brief arguing that the brothers' oral agreement to hold the ranch as joint tenants and to execute the personal representative's deed after the Argentina trip should be honored. The probate court set the matter for a trial.

9

¶ 15    At trial, Thomas testified that when he entered into the settlement agreement, he did not understand the difference between a tenancy in common and joint tenancy.  After the court explained the differences at the June 14 hearing, he understood that the brothers could decide among themselves how to hold the property.  After conducting his own research, Thomas concluded that he wanted to hold title to the ranch as joint tenants with the right of survivorship.  Thomas testified that his understanding of the term "heirs" in the settlement agreement referred to the three brothers and that they would be the sole heirs to the ranch.

¶ 16    Steven similarly testified that his understanding of the term "heirs" in the settlement agreement was the three brothers.  Steven clarified that because he and his brothers did not know the difference between tenants in common and joint tenants at the time they signed the settlement agreement, "this is the avenue we took for a brother to gift or sign it over to another brother as an heir."  Steven said that, after the court's explanation at the June 14 hearing, he conducted his own research.  He said the three brothers spoke in July and decided to hold the property as joint tenants.  Steven said he wanted the ranch to stay with the brothers rather

than passing to other individuals because "it's a family farm that had been in the family for over three generations, and our parents are buried on the family farm, and we don't want someone else coming in and screwing that up."

¶ 17    The court also heard testimony from Zachary Akin, Steven's son, who was close to his uncle Bill.  During one of their conversations, Bill said he felt strongly about the brothers keeping the property and excluding both Austynn and Mariel from ownership primarily because Bill had a strained relationship with Mariel.  Akin said Bill told him that the three brothers agreed to own the ranch as joint tenants.

¶ 18    The probate court also heard from Austynn.  Austynn testified that during a conference call in July, the three brothers agreed to hold the ranch as joint tenants.

¶ 19    Michael Phillips, a longtime friend of Steven and Bill, testified that he spoke with Bill in July about the family ranch.  Bill said that he wanted to "keep it in the family between the three brothers as long as possible."  Phillips said that Bill's biggest concern was that he did not want a third party to force the ranch to a sheriff's sale.

¶ 20    In contrast, Mariel testified that Bill understood the difference between tenants in common and joint tenants with the right of survivorship and wanted the property to be titled as a tenancy in common with his brothers.  Mariel described Bill's relationship with Steven and Thomas as very estranged.

¶ 21    Mariel's law school friend, Miguel Gonzalez, testified that Bill was angry about the 2020 deed conveying the ranch to Steven and Austynn and that he asked Gonzalez how he could prove it was forged.  Gonzalez also testified that, based on his conversations with Bill, he believed that Bill understood the difference between tenancy in common and joint tenancy before Fletcher's death. However, Bill never discussed how he wanted to structure the transfer of the ranch.

¶ 22    Finally, James Stephan, Bill and Mariel's neighbor, testified that Bill and Mariel were living together at the time of Bill's death and that they were happily married.  Again, Bill never discussed how he wanted to structure the transfer of the ranch.

¶ 23    In a thorough written order, the court found:

- After the June 14 hearing, the three brothers reached an oral agreement to hold the ranch as joint tenants with

the right of survivorship. They decided to prioritize keeping the property in the family over their individual interests. The court found all testimony from Mariel and her witnesses to the contrary not credible or biased.

- Despite the three brothers' intent to hold the ranch as joint tenants, the plain language of section 38-31-101(1), C.R.S. 2024, required a written document as a prerequisite to the establishment of a joint tenancy for real property.

- Because the deed conveying the ranch to the brothers in joint tenancy was not executed before Bill's death, the presumption of tenants in common applied to the settlement agreement.

- The family ranch would pass to Thomas, Steven, and Bill's estate as tenants in common.

¶ 24    Thomas challenges the court's order on two grounds. He first contends that section 38-31-101(1), which applies to conveyances and devises, does not apply here because the settlement agreement neither conveyed nor devised the ranch. Second, he alternatively contends that the oral agreement with his brothers is a separate

contract that can be enforced through the execution of a deed in joint tenancy. We agree the court erred and reverse the order.

## II. Application of Section 38-31-101(1)

¶ 25 Thomas contends that the plain language of section 38-31-101(1) does not bar the enforcement of the brothers' oral agreement. Because the settlement agreement did not convey or devise any real property, we agree.

### A. Standard of Review and Applicable Law

¶ 26 We review the court's statutory interpretation de novo. *Premier Bank v. Bd. of Cnty. Comm'rs*, 214 P.3d 574, 577 (Colo. App. 2009). Our primary objective "is to ascertain and effectuate the General Assembly's intent." *In re Estate of Arnold*, 2024 COA 44, ¶ 10. To do that, we begin with the statute's plain language, giving that language its commonly accepted and understood meaning. *Id.* If the statutory language is unambiguous, we apply it as written. *Id.* We also review de novo the court's application of the statute to the facts of this case. *See id.* at ¶ 9.

¶ 27 Section 38-31-101, in pertinent part, states:

> Except as otherwise provided in subsection (3)
> of this section and in section 38-31-201,
> [C.R.S. 2024,] no *conveyance* or *devise* of real

14

property to two or more natural persons shall create an estate in joint tenancy in real property unless, in the instrument conveying the real property or in the will devising the real property, it is declared that the real property is conveyed or devised in joint tenancy or to such natural persons as joint tenants.

(Emphases added.)

¶ 28    A conveyance is a transfer of title to property by deed. *Ford v. Summertree Lane Ltd. Liab. Co.*, 56 P.3d 1206, 1208 (Colo. App. 2002); *Platt v. Aspenwood Condo. Ass'n*, 214 P.3d 1060, 1066 (Colo. App. 2009) (a conveyance is a transfer of title to property bydeed); *Premier Bank*, 214 P.3d at 577 (a conveyance is the transfer of title to land from one person to another by delivery and acceptance of a deed).

¶ 29    Devise, "when used as a noun, means a testamentary disposition of real or personal property and, when used as a verb, means to dispose of real or personal property by will." § 15-10-201(12), C.R.S. 2024.

## B. Analysis

¶ 30    We begin by noting that Fletcher died intestate and, thus, had no will in which to "devise" the ranch. Further, the parties agree that no document currently exists that transfers the ranch from

Fletcher's estate to the three brothers. Given the absence of a conveyance or a devise, we conclude that section 38-31-101(1) does not apply.

¶ 31 To the extent the probate court found that the settlement agreement constituted a conveyance, we disagree. It contains no legal description of the property, no transference language, and no deed. *See* § 38-30-113, C.R.S. 2024 (providing the requirements and form for a valid deed for the conveyance of real property). Moreover, the purpose of the settlement agreement was to cease litigation. Indeed, the court informed the brothers that they would hold the property as tenants in common, unless they agreed otherwise, which is precisely what occurred during the July conference call where the brothers agreed to execute a personal representative's deed transferring the ranch to themselves as joint tenants. Section 38-31-101(1) applies only to the actual conveyance or devise, not to agreements to convey property in the future.

¶ 32 Accordingly, we conclude that Thomas, as the personal representative of Fletcher's estate, can prepare a personal

16

representative's deed effectuating the brothers' oral agreement to hold the ranch as joint tenants.

¶ 33     We are not persuaded otherwise by Mariel's assertion that the statute of frauds applies to the settlement agreement.  Section 38-10-108, C.R.S. 2024, provides:

> Every contract for the leasing for a longer period than one year or for the sale of any lands or any interest in lands is void unless the contract or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party by whom the lease or sale is to be made.

¶ 34     While not defined by statute, a sale means "a contract between parties to give and to pass rights of property for money which the buyer pays or promises to pay the seller for the thing bought or sold."  *Wilson v. Frederick R. Ross Inv. Co.*, 180 P.2d 226, 230 (Colo. 1947) (citation omitted); *see also* Black's Law Dictionary (12th ed. 2024) (defining a "sale" as "the transfer of property of title for a price").  Because there was no payment or promise of payment, we conclude the settlement agreement did not constitute a sale of any land or any interest in land and, thus, that the statute of frauds does not apply.

17

¶ 35    We are also unpersuaded by Mariel's argument that the oral agreement was impossible to perform after Bill's death. Impossibility or impracticability of performance is a defense to a breach of contract claim when "an unanticipated circumstance has made performance of the promise vitally different from what should reasonably have been within the contemplation of both parties when they entered into the contract." *City of Littleton v. Emps. Fire Ins. Co.*, 453 P.2d 810, 812 (Colo. 1969) (quoting 6 Samuel Williston & George J. Thompson, *A Treatise on the Law of Contracts* § 1931 (rev. ed. 1938)). Because the personal representative has not yet executed a deed for the property, the brothers' oral agreement may be enforced. Accordingly, we reject her argument and reverse the probate court's order.

### III.    Oral Agreement

¶ 36    Alternatively, we conclude that the brothers' oral agreement constituted a separately enforceable contract.

¶ 37    The existence of an oral contract is a question of fact, and this court "will defer to a district court's determination that a contract exists if competent evidence in the record supports that finding." *Tuscany Custom Homes, LLC v. Westover*, 2020 COA 178, ¶ 52

(citing *Yaekle v. Andrews*, 195 P.3d 1101, 1111 (Colo. 2008)); *see In re Marriage of Zander*, 2021 CO 12, ¶ 1 ("[O]ral contracts are enforceable under the law.").

¶ 38    Here, the probate court found that the brothers reached an oral agreement to hold the ranch as joint tenants with the right of survivorship after the June 14 hearing and before any deed was recorded. Accordingly, we will not disturb the probate court's finding.

¶ 39    Further, the oral agreement did not need to be in writing because the statute of frauds does not apply. As previously discussed, because the settlement agreement does not constitute a sale of land or an interest in land, it is not subject to the statute of frauds. The same reasoning applies here. The oral contract reflected the brothers' agreement concerning how to title the ranch in the future personal representative's deed and did not reflect a current sale of land or interest in land. *See* § 38-10-108. Therefore, we conclude that the brothers' oral agreement constitutes a separately enforceable contract.

## IV.  Disposition

¶ 40    The order is reversed, and the case is remanded for execution of a personal representative's deed in joint tenancy with right of survivorship.

JUDGE GOMEZ and JUDGE MEIRINK concur.